# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHARM STEP/EASY STREET<br>SALES CORPORATION,<br><br>                     Plaintiffs,<br><br>     v.<br><br>RACK ROOM SHOES, INC.<br>     and<br>RACK ROOM SHOES OF VIRGINIA, LLC<br>     and<br>HEINRICH DEICHMANN-SCHUHE<br>GmbH & Co. KG<br><br>                   Defendants. | Civil Action No. 1:09-CV-11787-RGS |

# MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

R. David Hosp (BBO#634091)
Mark S. Puzella (BBO#644850)
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

William Rudy (*pro hac vice* pending)
Lathrop & Gage, LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
wrudy@lathropgage.com
816.292.2000

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................3

     A.     Deichmann Pursues U.S. Retail Stores And Acts To Register Its House Brands With The USPTO. ...................................................................4

     B.     The Opening of Deichmann Stores In The United States.......................6

     C.     Charm Step Objects To Rack Room's Use of The EASY STREET Mark. ...........6

III.   DISCUSSION ...................................................................................................7

     A.     Charm Step's Failure To Properly Serve A Summons On Any Of The Defendants Means That This Court Has No Jurisdiction To Enter An Injunction Against Any Defendant. ..........................................................7

     B.     A Complaint Verified On Information And Belief Is Not Evidence That Can Support The Drastic Remedy Of A Preliminary Injunction.............8

     C.     Charm Step Cannot Establish A Likelihood That It Will Succeed On The Merits Of Its Infringement Claims........................................................10

         1.     Charm Step Fails To Establish Any Prior Use Of A Distinctive Mark In Any Area Where Rack Room Operates or Intends to Operate...............................................................................10

         2.     Charm Step Fails To Establish Likely Consumer Confusion. ...................11

         a.     Charm Step's Easy Street Mark Is Weak. ...............................12

         b.     The Distinctive Elements Of The Competing Uses Of EASY STREET Outweigh The Mere Identify Of The Words. ......................14

         c.     The Use of EASY STREET Mark On Footwear Does Not Establish Likelihood Of Confusion ...................................16

         d.     Charm Step Offers No Evidence Of Actual Confusion. .......................18

         e.     Charm Step Presents No Evidence That Rack Room Intended To Trade On Charm Step's Goodwill. .................................18

     D.     Even If Charm Step Could Establish A Likelihood Of Success On The Merits, The Balance Of Hardships Tips In Favor Of Something Less Than A Complete Injunction Against Rack Room ..........................................19

IV.    CONCLUSION...................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980) ......................................................................................................... 14

*American Board of Psychiatry and Neurology Inc. v. Johnson-Powell*, 129 F.3d 1 (1997) ......... 8

*Anheuser-Busch Inc. v. Caught-On-Bleu Inc.*, 288 F.Supp.2d 105, 119 (D.N.H. 2003) .............. 17

*Astra Pharamceutical Products, Inc.*, 718 F.2d at 1205 (quoting *Pignons S.A. de Mecanique v. Polariod Corp.*, 657 F.2d 482, 487 (1st Cir. 1981) ................................... 14

*Astra Pharmaceutical Products , Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201 (1st Cir. 1983) ............................................................................................................. 11

*Astra Pharmaceutical Products, Inc.*, 718 F.2d at 1207,1209 ................................................. 14

*Astra Pharmaceutical*, 718 F.2d at 1205 ................................................................................ 16

*Big Dog Motorcycles LLC v. Big Dog Holdings Inc.*, 402 F.Supp.2d 1312, 1326-28, 1338 (D.Kan. 2005) ................................................................................................... 15

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006) .................. 10

*Boston Duck Tours LP v. Super Duck Tours LLC*, 531 F. 3d 1, 15 (1st Cir. 2008) ..................... 12

*Boston Duck Tours LP*, 531 F. 3d at 7 .................................................................................... 16

*Boston Duck Tours*, 531 F.3d at 16 ....................................................................................... 12

*Calamari Fisheries Inc. v. Village Catch, Inc.,* 698 F.Supp. 994, 1009 (D. Mass.1988)............. 14

*CareFirst of Maryland Inc. v. First Care PC*, 434 F.3d 263 (4th Cir. 2006) .............................. 12

*CareFirst of Maryland Inc. v. First Care PC*, 434 F.3d 263, 273 (4th Cir. 2006) ...................... 18

*Carty v. Rhode Island Dept. of Corrections*, 198 F.R.D. 18, 20 (D.R.I. 2000) ............................ 7

*Cf. Copy Cop Inc. v. Task Printing Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995) ........................... 13

*Dialogo LLC v. Santiago-Bauza*, 425 F.3d 1 (1st Cir. 2005) ..................................................... 10

*Equine Technologies Inc. v. Equitechology Inc.*, 68 F.3d 542, 544 (1st Cir. 1995) ..................... 8

*First Sav. Bank v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) ............................ 15

*First Savings Bank FSA v. First Bank System Inc.*, 101 F.3d 645, 653-54 (10th Cir. 1996)........ 13

*Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) .................................................... 7

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 416 (1916)................................... 10

*International Association of Machinist and Aerospace Workers, AFL-CIO,* 103 F.3d at 206......................................................................................................................... 13

*International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center,* 103 F.3d 196, 201 (1st Cir. 1996) ................................. 11

*International Association of Machinists and Aerospace Workers, AFL-CIO,* 103 F.3d at 207......................................................................................................................... 15

*Jordache Enters. v. Hogg Wlyd, Ltd.,* 828 F.2d 1482, 1487 (10th Cir. 1987)............................. 18

*K-2 Ski Co. v. Head Ski Co.,* 467 F.2d 1087, 1088-89 (9th Cir. 1972).......................... 9

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)......................................................... 1

*Moose Creek Inc. v. Abercrombie & Fitch Co.,* 331 F.Supp.2d 1214, 1229-30 (C.D. Cal. 2004) ..................................................................................................................... 17

*NEC Electronics, Inc. v. New England Circuit Sales, Inc.*, 722 F.Supp. 861, 866 (D. Mass. 1989)............................................................................................................. 19

*Nike Inc. v. Just Do. It Enters.*, 6 F.3d 1225, 1230-1231 (7th Cir. 1993)..................................... 18

*One Industries LLC v. Jim O'Neal Distributing Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009) ........ 15

*Pignons S.A. de Mecanique v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir. 1981)..................... 12

*Raxton Corp. v. Anania Associates, Inc.*, 635 F.2d 924 (1st Cir. 1980) ...................................... 10

*Raxton,* 635 F.2d at 930-31 ........................................................................................... 10

*Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 623 (1925)...................... 8

*Roman Products Corp. v. DiCrasto Dairy and Food Products, Inc.*, 361 F.2d 599, 601 (2d Cir. 1966)........................................................................................................... 11

*Sly Magazine LLC v. Weider Publications LLC,* 529 F.Supp.2d 425, 439, 444 (S.D.N.Y. 2007) ..................................................................................................................... 15

*Sly Magazine LLC v. Weider Publications LLC*, 529 F.Supp.2d 425, 441 (S.D.N.Y. 2007) ....... 19

*Societe Comptoir De L'Industries Cotonniere, Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 190 F. Supp. 594, 601-602 (D.C.N.Y. 1961)........................................ 9

*Star Fin. Servs. v. Asstar Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996) ........................................... 12

*Sterling Brewing, Inc. v. Cold Spring Brewing Corp.*, 100 F.Supp. 412, 416 (D. Mass. 1951) ................................................................................................................................................. 10

*Touchston v. McDermott*, 120 F.Supp.2d 1055, 1059 (M.D.Fla. 2000) ......................................... 9

*Universal Money Ctrs., Inc. v. American Tele &b Tel. Co.,* 22 F.3d 1527, 1533 (10 Cir. 1994) ................................................................................................................................................. 13

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 810 (1st Cir. 1987) ................... 11

*Volkswagenwerk Aktiengesellschaft*, 814 F.2d 812, 817 (1st Cir. 1987) ...................................... 12

*Volkswagenwerk Aktiengesellschaft*, 814 F.2d at 818 ................................................................... 11

*Volkswagenwerk Aktiengesellschaft.*, 814 F.2d at 819 ................................................................. 18

**Statutes**

2 McCarthy, *supra*, § 11:82 ........................................................................................................... 12

5 McCarthy, *McCarthy on Trademark and Unfair Competition*, § 30:30 at 30-71-72 (2008) ......................................................................................................................................... 8

Wright & Miller, Federal Practice and Procedure §2949 at 218 (2d ed. 1995) ...................... 9

Defendant Rack Room Shoes, Inc. ("Rack Room") hereby opposes Charm Step/Easy Street Sales Corporation's ("Charm Step") motion for preliminary injunction. Defendants Rack Room Shoes of Virginia, LLC and Heinrich Deichmann-Schuhe GmbH & Co. KG ("HDS") make a special appearance to inform this Court that they have not been properly served with a summons and complaint in this action and that this Court lacks personal jurisdiction over them.

## I.    INTRODUCTION

Charm Step's motion for a preliminary injunction rests on conclusory allegations that consumers will likely confuse footwear sold under Rack Room's distinctive EASY STREET mark as originating from, or being sponsored by, Charm Step. Mere identity of the words used in a mark, however, does not warrant enjoining Rack Room's use of its distinctive mark, and Charm Step otherwise fails to present this Court with evidence supporting its claim for relief. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). No court has granted this relief where, as here, plaintiff's proof consists of allegations contained in a complaint verified upon information and belief.

As a threshold matter, Charm Step has not properly served its summons and complaint; therefore, this Court has no jurisdiction to even rule on the pending motion. With the expectation that Charm Step can cure this defect with respect to Rack Room, which last week opened its first retail establishment in the Massachusetts area, Rack Room alone consents to this Court's jurisdiction and opposes the merits of Champ Step's motion.

Substantively, Charm Step's motion for a preliminary injunction initially fails because Charm Step does not establish that it has a protectable interest in the EASY STREET mark in any place in which Rack Room has used or intends to use its distinctive EASY STREET mark.

Charm Step concedes that the United States Patent and Trademark Office ("USPTO") canceled its registration in its EASY STREET mark. While Charm Step contends that it has made continuous use of the EASY STREET mark, it offers no evidence of where it has sold or advertised its footwear to consumers under that mark, if anywhere.

Charm Step also fails to carry its burden of establishing that Rack Room's use of a distinct EASY STREET mark is likely to confuse the public into believing that Rack Room's footwear originates from the same source as, or is sponsored by, Charm Step. While Charm Step correctly cites to the relevant factors that guide the likelihood of confusion assessment, Charm Step fails to meet its heavy burden.

First, as used by Charm Step, the EASY STREET mark is extremely weak. While Charm Step traces use of the EASY STREET mark back to 1904, it offers no evidence of any volume of sales, where sales have occurred, or expenditures for advertising to support such sales. "Easy street" is a common phrase as indicated by the dozens of trademark registrations covering the phrase and its derivatives, and the numerous businesses throughout the United States doing business under that name. Charm Step's failure to timely renew its EASY STREET registration and its decision to wait nearly three months after learning of Room Rack's trademark application before objecting is further evidence that not even Charm Steep believes its EASY STREET mark to be strong or protectable. In fact, Charm Step previously allowed another Easy Street mark to register with the USPTO in 1995.

Second, the mere fact that both Charm Step and Rack Room use the phrase EASY STREET to identify footwear does not satisfy Charm Step's burden of proof. As Charm Step acknowledges, the two different presentations of the marks are readily distinguishable. Charm

Step uses a cursive presentation, while Rack Room uses a distinctive box design with EASY appearing in lower case atop of STREET appearing in all caps:

 

Third, Charm Step's argument that it competes with Rack Room by advertising and selling its footwear through similar channels and to similar customers ignores that Rack Room uses its mark to identify certain footwear sold only in Deichmann stores and that Rack Room does not sell any Charm Step products.

Fourth, while Charm Step dwells on Rack Room's application for registration of the EASY STREET mark as evidence of Rack Room's bad faith, Charm Step offers no evidence that Rack Room was motivated to trade on any goodwill Charm Step might have in the EASY STREET mark.  Instead, Rack Room's sole intent in using the EASY STREET mark in the United States is to continue its German parents' historic use of that brand throughout Europe to identify distinct footwear sold only at its stores.

Finally, not only does Charm Step fail to present evidence of any actual consumer confusion, it offers no survey evidence to support a likelihood of confusion.

## II.    BACKGROUND

Room Rack is a privately-held company incorporated in North Carolina that has sold footwear through its retail establishments in the United States for 80 years.  *See* accompanying declaration of Tim Nohr ("Nohr Decl.") at ¶ 3.   In 1984, Room Rack was acquired by an entity which is part of the Deichmann corporate family, a German footwear company founded in 1913. *Id.* at ¶ 4.  In Europe, Deichmann is currently the largest shoe retailer in Europe with more than

2000 outlets in more than 12 European countries selling 127 million pairs of shoes annually.[1]  *Id.*

In Europe, Deichmann sells both name brands, like adidas, Nike, and Puma, and its own  brands,

like AM Shoe Company, Graceland and Memphis One.  *Id.*  Deichmann launched the brand

EASY STREET around 1988.  *Id.*   Deichmann's own brands are sold only at Deichmann's retail

outlets in Europe and in Rack Room and Deichmann stores in the United States.  *Id.*

Rack Room currently operates nearly 400 stores in 29 states.  Nohr Decl. at ¶ 3.  While

Rack Room also sells both name brands, like Nine West, Vans, and Easy Spirit, along with its

own brands, like Maripe, Day Five, Pesaro and Bjorndahl, Rack Room does not sell and has not

sold any footwear under Deichmann's EASY STREET brand in Massachusetts.  *Id.* at ¶ 5.  Rack

Room does not operate an e-commerce web site where customer may purchase its products on-

line.  *Id.* ¶ 6.

> **A.     Deichmann Pursues U.S. Retail Stores And Acts To Register Its House Brands With The USPTO.**

For years Deichmann has considered bringing its Deichmann retail stores to the United

States.  Nohr Decl. at ¶ 7.  As part of this effort, Rack Room filed applications with the USPTO

to register a number of Deichmann's European brands, including Memphis One, Graceland, and

Easy Street.  *Id.* at ¶ 8, Ex. A and Ex. B.  Rack Room pursued these registrations to ensure

continuity between the brands sold in Europe with what would be sold in the United States and

take advantage of the goodwill Deichmann had established in those brands.  *Id.* at ¶ 8.

Investigation the availability of the EASY STREET mark, Rack Room discovered

numerous registrations using that phrase, or derivatives thereof, but did not discover a significant

---

[1] Defendants HDS is also part of the Deichmann family.  HDS, however, has no direct or indirect ownership interest in Rack Room.  Instead, Rack Room's is 100% owned by Dosenbach-Ochsner AG Schuhe und Sport Corporation Switzerland, which has no ownership interest in HDS.  Nohr Decl. at ¶ 4.

presence or use by any third party in the marketplace.  Nohr Decl. at ¶ 11.  Rack Room's

investigation also uncovered Charm Step's lapsed registration.[2]  *Id*.  While Charm Step made

limited use of the EASY STREET mark in connection with Internet sales, its presence in the

footwear marketplace appeared *de minimus*.  *Id*.  Far from seeking to capitalize on any goodwill

Charm Step may have had in the EASY STREET mark, and given the limited consumer

knowledge of Charm Step's EASY STREET mark, Rack Room did not perceive that its

registration of a distinctive EASY STREET design to identify the Deichmann brand would pose

any risk of consumer confusion.  *Id*. at ¶ 12.  In fact, Charm Step had previously allowed another

Easy Street mark to register with the USPTO in 1995.  Shaeffer Decl. ¶ 9, Ex. 8.

On April 10, 2008, Rack Room applied to register the mark EASY STREET and Design

along with seven other unrelated marks that are part of Deichmann's heritage.  Nohr Decl. at ¶

13.   The applied-for design mark consists of "easy" in lower case letters stacked atop the term

STREET in capital letters surrounded by a framed box.  *Id*. at ¶ 13, Ex. C.



The design mark application moved swiftly through the review process without the

USPTO raising any substantive objection and was approved for publication on September 2,

2008.  Nohr Decl. at ¶ 14, Ex. D.  The thirty-day opposition period also passed without any

objection.  *Id*. at ¶ 16.  On November 25, 2008, the USPTO issued a Notice of Allowance.  *Id*. at

¶ 16, Ex. E.  Thereafter, Rack Room sought and obtained two extensions of time to file its

Statement of Use, which is now due on November 25, 2009.  *Id*. at ¶ 16.

---

[2] Champ Step's registration for the EASY STREET mark was cancelled on April 12, 2008.  Notice of this cancellation is attached to the accompanying Declaration of John Shaeffer ("Shaeffer Decl.") as Exhibit 5.

**B.     The Opening of Deichmann Stores In The United States.**

The first Deichmann shoe store opened in the United States in September 2009 in Maryland and Georgia.  Nohr Decl. at ¶ 9.  In November, Rack Room opened two Deichmann stores in Massachusetts.  These stores are modeled after the Deichmann European stores in format, product offerings and, to some extent, branding, and are operated by Rack Room.  *Id.* at ¶ 9.  Over the next several months, Rack Room intends to open several additional Deichmann shoe stores throughout the United States.  *Id.* at ¶ 17.  In reliance on the Notice of Allowance issued by the USPTO, Rack Room has ordered several thousand pairs of shoes bearing the distinctive EASY STREET design mark on the insole and the box.  *Id.* at ¶ 17.  To date, however, Rack Room has not sold or displayed any shoes bearing its distinctive EASY STREET design mark in Massachusetts, nor has it advertised any footwear bearing that mark anywhere.  *Id.* at ¶ 17.

**C.     Charm Step Objects To Rack Room's Use of The EASY STREET Mark.**

On May 19, 2008, following the cancellation of its registration, Charm Street applied to the USPTO to again register EASY STREET as a mark.  Shaeffer Decl., ¶ 7, Ex. 6.  On September 5, 2008, Charm Step's application was suspended due to Rack Room's earlier filed application to register EASY STREET and Design.  *Id.*, ¶ 8, Ex. 7.

Charm Step first notified Rack Room of its objection to Rack Room's use of its distinctive EASY STREET mark in a November 25, 2008 letter.  Nohr. Dec. at ¶ 18, Ex. F.  Charm Step demanded that Rack Room abandon its application and cease all planned uses of its distinctive EASY STREET design.  Despite Rack Room's requests, Charm Step has not provided Rack Room with any documentation supporting its claim of continued trademark rights in the face of a cancelled registration.  *Id.* at ¶ 19.

In response to Charm Step's cease and desist letter, Rack Room attempted to reach a coexistence agreement with Charm Step whereby each party could use their respective EASY STREET marks, each making efforts to avoid any likelihood of consumer confusion. Nohr Decl. at ¶ 20. On October 23, 2009, Charm Step unexpectedly filed its complaint with this Court and emailed copies of the summons and complaint to Rack Room's outside trademark counsel. *Id.* at ¶ 21. While Charm Step's complaint is verified by Don Silberstein as the owner of Charm Step, he fails to allege personal knowledge of the facts or allegations in the complaint, but instead declares that its contents are true "to the best of my knowledge, information and belief." A copy of this verified complaint is attached to Shaeffer Decl. as Exhibit 1. At no time has Charm Step attempted to effectuate service of its summons and complaint on any of the defendants. Nohr Decl. at ¶ 22.

## III.    DISCUSSION

### A.    Charm Step's Failure To Properly Serve A Summons On Any Of The Defendants Means That This Court Has No Jurisdiction To Enter An Injunction Against Any Defendant.

Federal powers are limited to persons over whom the Court has jurisdiction. *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) ("It is axiomatic that, '[t]o hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees.' (citations omitted))". Before this Court can decide Charm Step's motion for a preliminary injunction, therefore, Charm Step must demonstrate that the Court has jurisdiction over the defendants. *Carty v. Rhode Island Dept. of Corrections*, 198 F.R.D. 18, 20 (D.R.I. 2000) ("When an injunction is sought, service of the summons and complaint is required. It is well settled that without service of process, this Court has no jurisdiction over the named defendant."). Charm Step has not properly served its summons and complaint on any of the

defendants, and the defendants have not waived service of process; thus, the Court does not have jurisdiction over the defendants to rule on Charm Step's motion.  *See Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 623 (1925) (personal jurisdiction over a defendant, requires either defendant's voluntary appearance or service of process of summons). Moreover, neither HDS nor Rack Room Shoes of Virginia, LLC have any contacts with this jurisdiction that could support this Court's personal jurisdiction over them.  Nohr. Decl. at ¶ 22. While these defendants may authorize counsel to speak on their behalf at any hearing on this matter, such an appearance will be a special appearance only to contest jurisdiction and cannot form the basis for this Court's jurisdiction over them.

>    **B.    A Complaint Verified On Information And Belief Is Not Evidence That Can Support The Drastic Remedy Of A Preliminary Injunction.**

In order to be entitled to preliminary injunctive relief, Charm Step bears a heavy burden of proving (i) a likelihood of success on the merits; (ii) that it will suffer irreparable harm if the injunction is not granted; (iii) that its injury outweighs the harm to Rack Room; and (iv) that the public interest will not be adversely impacted by the grant of such relief.  *American Board of Psychiatry and Neurology Inc. v. Johnson-Powell*, 129 F.3d 1 (1997); 5 McCarthy, *McCarthy on Trademark and Unfair Competition*, § 30:30 at 30-71-72 (2008) ("the grant of a preliminary injunction has been characterized as 'the exception, not the rule' . . . [and] represents a judicial power that 'is at best done sparingly.'" (citations omitted)).   To prevail, Charm Step must bring forth evidence to support the likelihood that it will succeed on its claims for infringement.  *See Equine Technologies Inc. v. Equitechology Inc.*, 68 F.3d 542, 544 (1st Cir. 1995) ("The central issue . . . with most preliminary injunction trademark cases . . . is whether plaintiff demonstrated a likelihood of success on the merits.").

A motion for preliminary injunction must be supported by facts presented by affidavit or testimony, and unproven allegations contained in a complaint are insufficient. *Societe Comptoir De L'Industries Cotonniere, Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 190 F. Supp. 594, 601-602 (D.C.N.Y. 1961). While a "verified complaint . . . may afford the basis for a preliminary injunction . . . if the facts so appearing consist largely of general assertions . . . a court should not grant such relief . . . ." *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972). Moreover, although a complaint may be verified, a plaintiff does "not establish[] a likelihood of success on the merits of [its] claim . . . [if] the details contained in the text of the pleading are based upon information and belief." *Touchston v. McDermott*, 120 F.Supp.2d 1055, 1059 (M.D.Fla. 2000); Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §2949 at 218 (2d ed. 1995) ("[W]hen the primary evidence introduced is an affidavit made up information and belief rather than personal knowledge, it generally is considered insufficient to support a motion for preliminary injunction."). The only "evidence" cited in support of Charm Step's motion is its verified complaint. This complaint, however, is riddled with conclusory allegations rather than pointed facts -- *e.g.* "[C]onsumers throughout the United States have come to associate EASY STREET with Charm Step . . . and its high quality footwear." Shaeffer Decl., Exh. 1 at ¶ 13. On critical elements of its proof, Charm Step offers nothing more that allegations on information and belief -- *e.g.* "On information and belief, the Defendants have already sold, or will shortly be selling goods bearing the Infringing Mark, at its stores in Maryland, Massachusetts, and New Hampshire." *Id* at ¶ 49. Moreover, Don Silberstein's verification of Charm Step's complaint utterly fails to indicate to which, if any, of the facts alleged in the complaint he can attest based on his personal knowledge. Instead, he generally

states only that his "averments set forth therein are true to the best of my knowledge, information and belief." *Id* at 22. Charm Step's motion therefore fails for lack of evidentiary support.

### C.    Charm Step Cannot Establish A Likelihood That It Will Succeed On The Merits Of Its Infringement Claims.

While Charm Step's verified complaint pleads many causes of action, the pending motion is predicated only on its claims for trademark infringement. To succeed on its infringement claims, Charm Step must "demonstrate both that its mark merits protection and that the alleged infringing use is likely to result in consumer confusion." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006). While the Court's analysis is not a final determination on the issues, the Court must be convinced that such a ruling in the plaintiff's favor is the probable outcome. *Dialogo LLC v. Santiago-Bauza*, 425 F.3d 1, 3 (1st Cir. 2005).

### 1.    Charm Step Fails To Establish Any Prior Use Of A Distinctive Mark In Any Area Where Rack Room Operates or Intends to Operate.

A plaintiff is entitled to protection of its mark at common law if it is the first to use a distinctive mark within a geographic area. *See Raxton Corp. v. Anania Associates, Inc.*, 635 F.2d 924 (1st Cir. 1980) ("the owner of a trademark cannot 'monopolize markets that his trade has never reached.'") (quoting *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 416 (1916)). While a federal registration entitles a holder to a presumption of distinctiveness nationwide, common law rights extend only to areas where the mark is used. *See Raxton,* 635 F.2d at 930-31, (common law trademark right reach only areas where the senior user can demonstrate prior use or reputation); *Sterling Brewing, Inc. v. Cold Spring Brewing Corp.*, 100 F.Supp. 412, 416 (D. Mass. 1951) ("it is settled that under [Massachusetts] law the right are not protected beyond the territory where the plaintiff's goods are sold, where he has no customer or trade"). Since Charm Step allowed its federal trademark registration to lapse, it lost its presumption of

nationwide protection. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 810 (1st Cir. 1987) (cancellation of trademark registration for any reason results in the loss of any rights not conferred by common law). Charm Step offers no evidence whatsoever that it is the first to use the EASY STREET mark in connection with footwear any place where Rack Room uses, or intends to use, its distinctive EASY STREET mark. Deichmann adopted the EASY STREET mark in Europe without any knowledge of Charm Step's use. While Rack Room may have learned of Charm Step's historic use of an EASY STREET mark when it pursued federal registration in the United States, that fact alone does not defeat defendants' initial good faith adoption. *See Roman Products Corp. v. DiCrasto Dairy and Food Products, Inc.*, 361 F.2d 599, 601 (2d Cir. 1966) ("The defendants' good faith in adopting and initially using the 'Roma' mark . . . is not tainted by their subsequent awareness of the plaintiff's use . . . ."). Further, Rack Room registered a design mark to differentiate its mark from Charm Step's expired mark.

### 2.    Charm Step Fails To Establish Likely Consumer Confusion.

Courts "typically consider eight factors in assessing likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods . . .; (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its alleged infringing mark; and (8) the strength of the plaintiff's mark." *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 201 (1st Cir. 1996). "No one listed factor is necessarily determinative, but each must be considered." *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201 (1st Cir. 1983). Because elements 2 through 5 are interrelated, courts commonly consider them together, as will be done here. *Volkswagenwerk Aktiengesellschaft*, 814 F.2d at 818. "Although

11

the eight-factor . . . analysis typically begins with an evaluation of the similarities and differences between the marks at issue, there is no necessary sequence in the eight-factor analysis." *See Boston Duck Tours LP v. Super Duck Tours LLC*, 531 F. 3d 1, 15 (1st Cir. 2008) (beginning eight factor analysis with strength of the mark).

a.  <b>Charm Step's Easy Street Mark Is Weak.</b>

"'Strong' marks are accorded broader protection against infringement than are 'weak' marks." *Volkswagenwerk Aktiengesellschaft*, 814 F.2d at 817; *citing Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981). "The strength of a mark is the degree to which a consumer in a relevant population, upon encountering the mark would associate the mark with a unique source." *CareFirst of Maryland Inc. v. First Care PC*, 434 F.3d 263 (4th Cir. 2006) (substantial third party use undermined strength of mark).

An analysis of mark strength in the First Circuit requires a practical evaluation of the commercial strength of the mark. *Boston Duck Tours*, 531 F.3d at 16 (First Circuit has focused on "both the conceptual and commercial strength of [the mark]."). In determining the commercial strength of a mark the Court should look to "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's action to promote the mark." *Star Fin. Servs. v. Asstar Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996); *see also* 2 McCarthy, *supra*, § 11:82 ("When determining the commercial or marketplace strength of a mark, the courts look to the same kind of evidence of real world recognition of the mark as is used to decide the presence or absence of secondary meaning to determine whether a noninherently distinctive designation is or is not a valid mark").

To support the strength of its mark, Charm Step cites nothing more than its acquisition of the EASY STREET mark in 1991, its alleged continued use since then, the use by its predecessor

12

dating back to 1904, and a smattering of alleged recent advertisements that purportedly include references to Charm Step footwear sold under the EASY STREET mark.  Charm Step offers nothing to indicate that it has achieved anything other than nominal sales since it acquired the EASY STREET mark in 1991 or that Charm Step was anything other than an unprofitable division that a large footwear company had targeted for liquidation.  *See International Association of Machinist and Aerospace Workers, AFL-CIO,* 103 F.3d at 206 (evidence that mark had been used for a significant period alone insufficient to meet plaintiff's burden).  The few ill-defined advertisements attached to its motion provide the Court with no evidence that Charm Step has engaged in any meaningful promotion of its mark or that there is any public awareness of the EASY STREET mark.  *Cf. Copy Cop Inc. v. Task Printing Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995) (evidence that plaintiff had "spent a significant amount of money on promoting its . . . marks for a substantial length of time with great success" supported the conclusion that the marks were strong).

"A strong mark is one that is rarely used by parties other than the owner of the trademark while a weak trademark is one that is often used by other parties."  *Universal Money Ctrs., Inc. v. American Tele &b Tel. Co.,* 22 F.3d 1527, 1533 (10 Cir. 1994).  "The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark."  *First Savings Bank FSA v. First Bank System Inc.*, 101 F.3d 645, 653-54 (10th Cir. 1996).  Nothing supports the conclusion that EASY STREET is viewed by consumers as a unique identifier of Charm Step footwear.  For decades the American public has equated the phase "easy street" with the good life.  "Easy street" is a pervasive phrase in popular culture, as evidenced by the more than 267,000 hits on Google for a search of the term "easy street."  Shaeffer Decl. at ¶ 3, Exhibit 2.

Dunn & Bradstreet lists about 100 businesses in the United States utilizing the name "easy street" to identify their goods and/or services.  Shaeffer Decl. at ¶ 4, Exhibit 3.  Similarly, the USPTO identifies dozens of registrations utilizing the mark EASY STREET, or some derivative thereof, including registrations for goods in the same class as Charm Step's footwear.  Shaeffer Decl. at ¶ 5. Exhibit 4.  It is impossible to conclude that Charm Step could ever produce any evidence of that EASY STREET is anything but an extremely weak identifier of Charm Step footwear.

> b. **The Distinctive Elements Of The Competing Uses Of EASY STREET Outweigh The Mere Identity Of The Words.**

Charm Step essentially begins and ends its infringement analysis with the simple observation that both parties identify footwear with an EASY STREET mark and that the words sound the same.  As Charm Step acknowledges, however, "'similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features.'"  *Astra Pharamceutical Products, Inc.*, 718 F.2d at 1205 (quoting *Pignons S.A. de Mecanique v. Polariod Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)).  Rather than simply looking at words on a page, "[s]imilarity of marks must be considered in light of what occurs in the marketplace taking into account the 'circumstances surrounding the purchase of the goods or services.'"  *Calamari Fisheries Inc. v. Village Catch, Inc.,* 698 F.Supp. 994, 1009 (D. Mass.1988) (quoting *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980)).

While Charm Step would like this Court to believe that a plaintiff always prevails against a defendant who uses the same words in its mark, courts in the First Circuit and throughout the United States continually refuse to be swayed by such a simplistic argument.  *See, e.g. Astra Pharmaceutical Products, Inc.*, 718 F.2d at 1207,1209 (summary judgment affirmed for defendant even though defendant used the identical ASTRA mark to identify its medical device

as the name of the plaintiff pharmaceutical company); *International Association of Machinists and Aerospace Workers, AFL-CIO*, 103 F.3d at 207 (affirming grant of summary judgment even though defendant employer utilized union mark because other source identifying features minimized likelihood of confusion); *One Industries LLC v. Jim O'Neal Distributing Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009) (even though both plaintiff and defendant used a stylized O as their logos for motorcycle apparel "[a] comparison of how the marks appear in the marketplace confirms the conclusion that the marks are visually dissimilar"); *First Sav. Bank v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) (reversing grant of summary judgment in plaintiffs favor finding that the district court relied too heavily on the pronunciation of the marks where there the differences between the presentation of the marks outweighed their similarities); *Sly Magazine LLC v. Weider Publications LLC,* 529 F.Supp.2d 425, 439, 444 (S.D.N.Y. 2007) (summary judgment granted even though both plaintiff's and defendant's magazines were entitled "Sly" because the visual differences in the script); *Big Dog Motorcycles LLC v. Big Dog Holdings Inc.*, 402 F.Supp.2d 1312, 1326-28, 1338 (D.Kan. 2005) (granting summary judgment for motorcycle accessory company even though both prominently used the words BIG DOG in their marks each presented the mark differently).

Here, the uncontested presentation of Charm Step's and Rack Room's use of their respective EASY STREET marks is visually distinct.

  

Charm Step does not allege, let alone offer any evidence, that consumers will have contact with either mark independent of their distinct visual references, minimizing the import of

auditory similarity. Moreover, Rack Room uses EASY STREET as a continuation of Deichmann's own European brand, meaning that Rack Room's use of the EASY STREET mark will always be in conjunction with Deichmann. "It is well settled that under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." *Astra Pharmaceutical*, 718 F.2d at 1205 (affirming grant of summary judgment for defendant finding that the manufacturers name was printed on other parts of a blood analyzing machine mitigating the similarities between the marks). Here, consumers only encounter defendants' distinctive EASY STREET mark in connection with a Deichmann shoe store. The visually distinctive manner in which Rack Room uses the EASY STREET mark and Charm Step's failure to identify any instance where a consumer would encounter defendants' use of the mark EASY STREET outside of this visually distinctive presentation undermines any similarity based simply upon the identity of the words.

### c. The Use of EASY STREET Mark On Footwear Does Not Establish Likelihood Of Confusion

The mere fact that both Room Rack and Charm Step sell footwear is insufficient to establish a likelihood of confusion. The First Circuit has held that even where two companies are "direct competitors because their products, potential customers, channels of trade and advertising all significantly overlap," such circumstances alone are "insufficient to establish a successful claim of infringement." *Boston Duck Tours LP*, 531 F. 3d at 7 (reversing grant of a preliminary injunction enjoining defendants use of mark SUPER DUCK TOUR brought by a plaintiff who operated under the mark BOSTON DUCK TOURS). "[T]he point of examining channels of trade [advertising and potential customers] as part of the likelihood of confusion analysis . . . [is] to gauge the extent to which consumers might encounter the parties' products in the same context and therefore confuse them." *Anheuser-Busch Inc. v. Caught-On-Bleu Inc.*,

288 F.Supp.2d 105, 119 (D.N.H. 2003) (finding factors weighed in favor of a likelihood of confusion among competing beer brands). Here, Charm Step fails to demonstrate that consumers will encounter Rack Room footwear in a manner likely to cause them to confuse Charm Step as the source of such footwear.

While Charm Step alleges its continued use of the EASY STREET mark on footwear and attaches to its verified complaint advertisements purporting to indicate that its footwear is available for purchase over the Internet – Charm Step fails to identify the provenance of the advertisements and ultimately leaves the Court to speculate about Charm Step's channels of trade. Two things, however, are undisputed: (1) Charm Step's products are not available at any Rack Room or Deichmann shoe store, and (2) footwear bearing Rack Room's distinctive EASY STREET mark are available only at Deichmann shoe stores. Charm Step fails to establish any overlap in channels of trade.

Moreover, Charm Step alleges that the parties' advertising of footwear bearing the EASY STREET marks will overlap, while offering the Court no evidence to support this conclusion. Charm Step point to a smattering of poorly identified advertisements purporting to mention its EASY STREET branded footwear, but it offers no evidence whatsoever that Rack Room has advertised footwear bearing its EASY STREET mark at all. Moreover, Charm Step's inclusion of advertisements by outlet stores that sell Charm Step shoes among a number of other competing brands actually supports the absence of any marketing channel overlap. *See Moose Creek Inc. v. Abercrombie & Fitch Co.*, 331 F.Supp.2d 1214, 1229-30 (C.D. Cal. 2004) (recognizing the distinction between marketing efforts aimed at retailer and a retailer's effort to market its own brands through its own retail establishments).

Finally, Charm Step argues that since the parties' respective footwear is relatively inexpensive, customers are likely to exercise less care making purchasing decisions and, as such, confusion is more likely.  Courts, however, routinely recognize that when it comes to apparel, even inexpensive apparel, consumers apply a heightened degree of care.  *See Nike Inc. v. Just Do. It Enters.*, 6 F.3d 1225, 1230-1231 (7th Cir. 1993) (in apparel context court rejected argument that degree of care depended upon price); *Jordache Enters. v. Hogg Wlyd, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987) (judge's conclusion following bench trial that customers were likely to exercise a "a high degree of care in purchasing clothing that costs between fifteen and sixty dollars" was not clearly erroneous).  Again, Charm Step simply fails to carry its burden of showing that any of these factors tips in its favor.

### d.  Charm Step Offers No Evidence Of Actual Confusion.

Charm Step presents the Court with no evidence of actual consumer confusion. Moreover, while not required, Charm Step does not present the Court with any survey evidence indicating the potential for any actual confusion.  This factor tips in Rack Room's favor.

### e.  Charm Step Presents No Evidence That Rack Room Intended To Trade On Charm Step's Goodwill.

Charm Step spends a substantial portion of its brief attacking Rack Room's application to register its distinctive EASY STREET mark and design.  Charm Step goes so far as to falsely accuse Room Rack of lying to the USPTO.  Even if any of these allegations were true, which they are not, all of them are utterly irrelevant to the intent element of the likelihood of confusion factors.  "The intent of the junior user is relevant only if the junior user intended to capitalize on the good will associated with the senior user's mark."  *CareFirst of Maryland Inc. v. First Care PC*, 434 F.3d at 273; *Volkswagenwerk Aktiengesellschaft.*, 814 F.2d at 819 (intent to capitalize on goodwill).  At best, Charm Step alleges that Rack Room was aware of Charm Step's use of

18

Easy Street.  "Mere knowledge[, however,] of the existence of a competitor's mark is insufficient to prove bad faith."  *NEC Electronics, Inc. v. New England Circuit Sales, Inc.*, 722 F.Supp. 861, 866 (D. Mass. 1989); *see also Sly Magazine LLC v. Weider Publications LLC*, 529 F.Supp.2d 425, 441 (S.D.N.Y. 2007) (receipt of cease and desist letter before magazine first published did not support bad intent).

Here, the unrebutted evidence is that Rack Room applied to register its distinctive EASY STREET mark in order to establish United States rights to a mark used by its parent in Europe for two decades.  While Rack Room was aware of Charm Step, it had good reason to believe that Charm Step did not intend to maintain its rights in its EASY STREET mark and that Rack Room's use of its distinctive EASY STREET design would not likely cause consumer confusion. The fact that the USPTO issued a Notice of Allowance concerning the mark justifies Rack Room's belief in this regard and directly contradicts any suggestion that Rack Room acted in bad faith.

> **D.     Even If Charm Step Could Establish A Likelihood Of Success On The Merits, The Balance Of Hardships Tips In Favor Of Something Less Than A Complete Injunction Against Rack Room**

Charm Step fails to address the substantial prejudice to Rack Room of an immediate injunction against its distinctive EASY STREET mark.  It also fails to recognize that the public's interest in avoiding any confusion could be mitigated by a disclaimer or some other less draconian measure than an absolute injunction.

The footwear industry is a slave to fashion trends and is subject to at least two different seasons each year -- Spring and Fall.  Nohr Decl. at ¶ 23.  Relying on the USPTO Notice of Allowance published in November 2008, Rack Room ordered footwear bearing its distinctive

EASY STREET mark. *Id.* at ¶ 17. Rack Room will suffer great prejudice if it is unable to sell this inventory during the relevant season.[3]

## IV.     CONCLUSION

For the foregoing reasons, Rack Room respectfully requests that the Court deny Charm Step's motion for a preliminary injunction.

---

[3] At a minimum, Charm Step must post a bond sufficient to cover the impact any preliminary injunction would have on Rack Room. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 22 n. 16 (1st Cir. 2009) ("once the court decides to grant equitable relief under Rule 65 it must require security from the applicant").

Dated:  November 24, 2009                    Respectfully submitted,

                                             RACK ROOM SHOES, INC.,


                                             By their attorneys,

                                             /s/ R. David Hosp
                                             R. David Hosp (BBO#634091)
                                             Mark S. Puzella (BBO#644850)
                                             Goodwin Procter LLP
                                             Exchange Place
                                             Boston, MA 02109
                                             T: 617.570.100
                                             F: 617.523.1231
                                             rhosp@goodwinprocter.com
                                             mpuzella@goodwinprocter.com

                                             William Rudy (*pro hac vice* pending)
                                             Lathrop & Gage, LLP
                                             2345 Grand Blvd., Suite 2200
                                             Kansas City, MO  64108
                                             wrudy@lathropgage.com
                                             816.292.2000

                                             Bridget Short (*pro hac vice* pending)
                                             Lathrop & Gage, LLP
                                             230 Park Avenue, Suite 1847
                                             New York City, NY  10169
                                             bshort@lathropgage.com
                                             212. 212.850.6229

                                             John Shaeffer (*pro hac vice* pending)
                                             Lathrop & Gage, LLP
                                             1880 Century Park East, Suite 1000
                                             Los Angeles, CA  90067
                                             jshaeffer@lathropgage.com
                                             310.789.4600

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 24, 2009.

<u>    /s/   R. David Hosp                    </u>